UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMES BROWN, )<br>    *Plaintiff*, )<br>)<br>*vs.* )<br>)<br>PALISADES COLLECTION, LLC, and FIRST )<br>NATIONAL COLLECTION BUREAU, INC., )<br>    *Defendants*. ) | 1:11-cv-00445-JMS-TAB |

## ORDER

Presently before the Court in this action under the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 *et seq.*, is the Motion to Dismiss filed by the two Defendant debt collectors in this action. [Dkt. 15.]

## I.
### STANDARD OF REVIEW

The Federal Rules impose only a notice-pleading requirement for complaints. Thus, "[s]pecific facts are not necessary; the [plaintiff] need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) (alteration omitted)) (per curium). Nonetheless, "a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled." *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007) (synthesizing *Erickson* and *Twombly*). In that circumstance, a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is proper. A motion filed under that rule asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. 544). For the purposes of that rule, the Court will ignore legally conclusory allegations. *Id.* at 1949-50 ("Although for the purposes of a mo-

tion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." (quotation omitted)). It will, however, give the complaint the benefit of reasonable inferences from all non-conclusory allegations. *See id.*

## II.
### ALLEGATIONS IN THE COMPLAINT

In his very brief First Amended Complaint, the Plaintiff, James Brown, claims that the Defendants illegally attempted to collect a debt from him that he didn't owe. After an introductory paragraph and a description of the parties, his First Amended Complaint makes the following substantive factual allegations:

8. Plaintiff has had, and currently has, an account with AT&T Mobility, account no. *****5493; account no. *****5493 is current and has never been more than thirty days delinquent.

9. Plaintiff has never owned account no. *****4492 with AT&T Wireless.

10. On March 5, 2011, Defendants sent Plaintiff a letter, attached hereto as Exhibit A, attempting to collect a debt in the amount of $687.29.

11. The debt allegedly owed by Plaintiff arose out of a transaction the subject of which was primarily for personal, family, or household purposes.

12. Plaintiff does not owe the debt as alleged by Defendants in Exhibit A.

[Dkt. 13 at 2.]

The letter attached as Exhibit A to the First Amended Complaint is addressed to "James Brown," sent to Plaintiff James Brown's apartment, references AT&T Wireless account *****4492, which the letter identifies as "your delinquent account," and proposes a payment plan. [Dkt. 13-1.] The letter also includes the following notice: "Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid." [*Id.*] If Mr. Brown disputed the debt in writ-

ing within that time frame, the Defendants indicated that they would obtain and provide him with verification of the debt and, at his request, would provide him with the name and address of the original creditor. [*Id.*]

## III.
### DISCUSSION

Mr. Brown claims that the Defendants violated two prohibited practices under the FDCPA by attempting to collect the debt from him that he says isn't his: making a "false representation of…the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2)(A); and attempting to "collect[]…any amount…unless such amount is expressly authorized by the agreement creating the debt or permitted by law," *id.* § 1692f(1).

For their part, the Defendants argue that both of his claims must fail for two reasons. First, the Defendants argue that Mr. Brown has failed to plausibly plead that the Defendants were attempting to collect a "debt" within the meaning of the FDCPA. Second, they argue that Mr. Brown can't sue in federal court over the attempted collection of a debt that he says that he doesn't owe unless he first disputes the debt with them. The Court will address both arguments in turn.

**A. Whether the Complaint Sufficiently Alleges an FDCPA "Debt"?**

For the purposes of the FDCPA's protections, a "'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Because Mr. Brown denies having ever owned the account referenced in the collection letter, the Defendants say, he can't plausibly argue that he knows that the debt was actually incurred for one of those statutorily protected purposes. [Dkt. 16 at 7-8.]

The Court, however, finds that Mr. Brown has sufficiently alleged the existence of an FDCPA "debt." The letter attached to his First Amended Complaint was addressed to him in a personal capacity, rather than in a corporate or business capacity (for example, "James Brown, President XYZ Corp." or "XYZ Corp. c/o James Brown"). That is enough to give plausibility to his allegation about the nature of the debt at issue, and more than enough to give the Defendants notice of which collection effort is the subject of this action.[1]

**B. Whether Mr. Brown Can Sue Without Having First Disputed the Debt at Issue?**

The Defendants' collection letter informed Mr. Brown that he could dispute the debt and that, if he did, they would send him verification of the debt. [Dkt. 13-1.] That offer to provide verification wasn't gratuitous; the FDCPA required it. 15 U.S.C. § 1692g(a). Had Mr. Brown exercised his statutory right to dispute the debt, the Defendants would have had two choices under the FDCPA: provide the verification of the debt or cease attempting to collect upon it. 15 U.S.C. § 1692g(b) (requiring the debt collector to "cease collection of the debt" if a consumer disputes a debt in writing within thirty days after the statutorily required notice and not resume collection until the debt collector provides the verification). Mr. Brown decided to sue instead of exercising that right. According to the Defendants, that failure to engage in the informal dispute resolution process precludes an action against them for attempting to collect the debt.

While a few (out-of-Circuit) courts have accepted the argument that the Defendants advance here, *see Richmond v. Higgins*, 435 F.3d 825 (8th Cir. 2006); *Bleich v. The Revenue Maximization Group, Inc.*, 233 F. Supp. 2d 496 (E.D.N.Y. 2002), this Court isn't one of them. When

---

[1] To the extent, if any, that the Defendants are really arguing that the FDCPA permits debt collectors to engage in statutorily declared unfair collection practices against third parties who don't actually owe anything to the creditor, the Court rejects that argument. The FDCPA includes not only actual obligations, but also merely "alleged obligation[s]" within its definition of a "debt." 15 U.S.C. § 1692a(5). The latter encompasses obligations that debt collectors attempt to enforce against the wrong party.

Congress wants to require plaintiffs to use non-judicial remedies before filing suit, Congress says so. *See, e.g.*, 42 U.S.C. § 2000e-5(f)(1) (permitting private suits under Title VII only after prospective plaintiffs have submitted them to the EEOC for possible mediation); 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). But no provision of the FDCPA explicitly requires debtors to use the informal debt verification procedure—unlike debt collectors who are explicitly forbidden from making false statements about debts in the first instance, 15 U.S.C. § 1692e(2)(A). Given the allocation of lawmaking functions to the legislative branch under our Constitution, the Court should always hesitate before concluding that Congress somehow "forgot" to mention a legal requirement in its statutes. This normal hesitation is, however, even further heightened with respect to the FDCPA, a remedial statute that courts interpret in favor of debtors, *cf. Gammon v. GC Servs. Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994) (judging the potential deceptiveness of statements under the FDCPA through the lens of an "unsophisticated consumer," rather than a reasonable consumer). Accordingly, the Court will enforce the FDCPA as it is written, not as the Defendants wish that it had been written; requesting informal debt verification is not a precondition to suit.

In reaching its holding, the Court rejects the Defendants' contention that a failure to accept their argument would render "meaningless" the verification procedure that Congress created. [*See* dkt. 18 at 4.] As Judge Tinder previously explained, a debtor's failure to take advantage of that verification procedure has a real consequence: "A debtor's failure to dispute the charges in a dunning letter…allows the debt collector to continue pursuing collection of a properly-stated debt without fear of violating the FDCPA." *Whitaker v. Hudson & Keyse, LLC*, 2007

U.S. Dist. LEXIS 57706, *9 (S.D. Ind. 2007). A consumer failure's to dispute the debt in no way absolves debt collectors from failing to properly state the debt. *Id.* at 10.

Insofar as the Defendants worry that "if the FDCPA [doesn't require debtors to contest their debts with debt collectors before suing], any debt collector could be sued for any mistake by a creditor regardless of the debt collector's actions," [dkt. 18 at 5], the Defendants are only half right. They're right in that under the FDCPA, a representation about a debt "need not be deliberate, reckless, or even negligent to trigger liability—it need only be false." *Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 495 (7th Cir. 2007). *See also Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004) ("Debt collectors may not make false claims, period." (citation omitted)). They're wrong, however, to worry that debt collectors' attempts to avoid mistakes will be forever irrelevant under the Court's holding. "[T]he Act provides a complete defense to a debt collector who 'shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.' 15 U.S.C. § 1692k(c)." *Id.*[2] That defense, and thus any alleged reasonableness of the Defendants' conduct, isn't yet before the Court—and won't be until the Defendants answer and assert, if appropriate, that affirmative defense. *See Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674-675 (7th Cir. 2009) ("Dismissing

---

[2] The Defendants make an undeveloped assertion that *Randolph*, 368 F.3d 726, suggests that consumers must dispute their debt with debt collectors before filing suit. [*See* dkt. 16 at 10.] That case, as the Defendants note, holds that "[c]ourts do not impute to debt collectors other information that may be in creditors' files—for example, that debt has been paid or was bogus to start with." *Randolph*, 368 F.3d at 729. That non-imputation rule makes it legally possible for debt collectors to successfully establish their statutory affirmative defense; without the rule, debt collectors couldn't successfully claim, as the Defendants evidently wish to do here, that they reasonably believed the debtor owed the debt. Absent more cogent argument, the Court finds *Randolph* irrelevant to deciding whether verification is a precondition of suit, a question not considered there.

a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations.").

## IV.
### CONCLUSION

The Defendants' motion to dismiss Mr. Brown's First Amended Complaint, [dkt. 15], is **DENIED**. Mr. Brown's motion for oral argument, [dkt. 19], is **DENIED AS MOOT**.

06/24/2011

*[Signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Robert E. Duff
INDIANA CONSUMER LAW GROUP
robert@robertdufflaw.com

Michael S. Poncin
MOSS & BARNETT
poncinm@moss-barnett.com

John Karl Rossman
MOSS & BARNETT
rossmanj@moss-barnett.com